UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES DANA TATRO,<br><br>                Plaintiff,<br>v.<br><br>ACTUARIAL STRATEGIES, INC.,<br><br>                ASI. | Civil Action No. 4:05-cv-40024-FDS |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES
AND COUNTERCLAIMS TO PLAINTIFF'S COMPLAINT**

**PARTIES**

1. Actuarial Services, Inc., (hereinafter "ASI" or "Defendant") lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1, and therefore leaves Plaintiff to his proof.

2. Admitted.

**JURISDICTION**

3. ASI admits so much of Paragraph 3 as alleges that ASI has transacted business and has contracted to supply services or things in the Commonwealth of Massachusetts. ASI denies that it has caused tortious injury by an act in the Commonwealth of Massachusetts. The remaining allegations of Paragraph 3 set forth legal conclusions which do not require a reply.

**FACTS**

4. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 4, and therefore leaves Plaintiff to his proof.

5. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5, and therefore leaves Plaintiff to his proof.

6. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6, and therefore leaves Plaintiff to his proof.

7. ASI admits so much of Paragraph 7 as alleges that ASI believed Plaintiff to have experience, background and training in the area of variable annuities, and that Plaintiff was a viable candidate for employment in part because of that perceived experience, background and training. ASI lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 7.

8. Admitted.

9. ASI denies so much of Paragraph 9 as alleges that Mr. Lakenbach approached Plaintiff regarding potential employment. ASI admits the remaining allegations of Paragraph 9.

10. Denied.

11. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11, and therefore leaves Plaintiff to his proof.

12. ASI denies so much of Paragraph 12 as alleges that Plaintiff refused a $20,000 incentive to relocate his family on or about December 2002. ASI lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 12, and therefore leaves Plaintiff to his proof.

13. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13, and therefore leaves Plaintiff to his proof.

14. ASI admits so much of Paragraph 14 as alleges that Plaintiff accepted the terms and conditions of ASI's December 16, 2002 offer letter, and that Exhibit A to the Plaintiff

Complaint is a true and accurate copy of that agreement. ASI lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 14, and therefore leaves Plaintiff to his proof.

15. ASI admits so much of Paragraph 15 as alleges that ASI required Plaintiff to enter into a covenant not to compete entitled "Intellectual Property Agreement Covenant Not to Compete." ASI further admits so much of Paragraph 15 as alleges that Plaintiff executed this covenant "in conjunction with his acceptance of the position on December 20, 2002," and that Exhibit B to Plaintiff's Complaint is a true and accurate copy of that covenant. ASI denies that Mr. Lakenbach led Plaintiff to believe that this covenant "was entered into primarily and for the sole purpose of protecting the proprietary rights to products the ASI had developed and patented." ASI lacks knowledge or information sufficient to form a belief as to the remaining allegations of Paragraph 15, and therefore leaves Plaintiff to his proof.

16. Admitted.

17. Plaintiff admits so much of Paragraph 17 as alleges that his employment with ASI "began in a beneficial fashion," that Plaintiff "became involved in all aspects of his position, which included amongst other things, product development," that "Plaintiff attended an event sponsored and paid for by Ruark Insurance Advisors," and that Mr. Lakenbach agreed to let Plaintiff attend the conference. Except as expressly so admitted, the remaining allegations of Paragraph 17 are denied.

18. ASI admits so much of Paragraph 18 as alleges that Plaintiff developed a client relationship with Merrill Lynch in 2003. ASI denies that Mr. Lakenbach ever informed Plaintiff that he "he did not have a chance of acquiring any work with Merrill Lynch as

his contact, Debbie Adler, the chief actuary with Merrill Lynch did not like Mr. Lakenbach." Except as expressly so admitted or denied, ASI lacks knowledge or information sufficient to form a belief as to the truth of allegations of Paragraph 18.

19. ASI admits so much of Paragraph 19 as alleges that ASI "modified the engagement letter with Manulife to include a provision stating Manulife could not solicit people for hire from the ASI," that "in August of 2003, the Plaintiff's past employer, Manulife, indicated that they needed actuarial help," and that such help included modifying a Manulife program. ASI lacks knowledge or information sufficient to form a belief as to whether Plaintiff "originally designed" this program while employed by Manulife Financial ("Manulife"). ASI denies that it acted in bad faith towards Plaintiff.

20. Denied.

21. Denied.

22. ASI avers that in April 2003 Plaintiff received the title of "Vice President and Consulting Actuary." ASI admits so much of Paragraph 22 as alleges that ASI did not prevent Plaintiff from working three days at home and 2 days in the office, and that Plaintiff received a $13,000 raise in October 2003. Except as expressly so averred or admitted, the allegations of Paragraph 22 are denied.

23. Defendant denies so much of Paragraph 23 as alleges that Plaintiff received a promotion in October 2003. ASI admits that it did not require Plaintiff to re-sign his covenant not to compete in October 2003.

24. ASI admits so much of Paragraph 24 as alleges that Plaintiff brought Manulife to ASI as a client, that Mr. Clymer was hired by ASI in October 2003, and that Plaintiff landed a

lucrative valuation project with Merrill Lynch.  Except as expressly so admitted, the allegations of Paragraph 24 are denied.

25. ASI admits so much of Paragraph 25 as alleges that the Plaintiff received in July or August 2004 a performance review demonstrating his performance was in some ways acceptable, and that a principal relationship was possible if he fulfilled several critical conditions that he was not yet satisfying.  ASI further admits that Exhibit C to Plaintiff's Complaint is a true and accurate copy of the review.  Except as expressly so admitted, the allegations of Paragraph 25 are denied.

26. ASI admits so much of Paragraph 26 as alleges that product development slowed in the summer of 2004.  ASI avers that Mr. Lakenbach did not want to hire another low-level actuary until there was sufficient work to warrant such a hire.  Except as expressly so admitted or averred, ASI denies the allegations of Paragraph 26.

27. Denied.

28. Denied.

29. Denied.

30. Denied.

31. Denied.

32. ASI lacks knowledge or information sufficient to form a belief as to what type of bonus Plaintiff "expected", and therefore leaves Plaintiff to his proof.  The remaining allegations of Paragraph 32 are denied.

33. ASI admits so much of Paragraph 33 as alleges that ASI scanned Plaintiff's laptop, that this scan revealed that Plaintiff had been using his laptop for personal use, and that ASI confronted him about the misuse of his laptop.  ASI avers that this misuse included the

viewing and downloading of hardcore pornographic materials. Except as expressly so averred or admitted, the allegations of Paragraph 33 are denied.

34. ASI admits so much of Paragraph 34 as alleges that "[d]uring the entire course of his employment with the Defendant, the Plaintiff had always utilized his laptop for personal use." ASI denies so much of Paragraph 34 as alleges that he utilized his laptop for personal use with ASI's permission. ASI lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34, and therefore leaves Plaintiff to his proof.

35. ASI admits so much of Paragraph 35 as alleges that Mr. Lakenbach approached the Plaintiff indicating that it would be in his best interest to offer a letter of resignation. Except as expressly so admitted, the allegations of Paragraph 35 are denied.

36. Denied.

37. Denied.

38. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 38, and therefore leaves Plaintiff to his proof.

39. Admitted.

40. ASI admits so much of Paragraph 40 as alleges that Plaintiff informed Manulife that Plaintiff had a non-compete agreement and that pursuant to that agreement, Plaintiff could not perform the short-term project for Manulife. Except as expressly so admitted, the allegations of Paragraph 40 are denied.

41. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 41, and therefore leaves Plaintiff to his proof.

42. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 42, and therefore leaves Plaintiff to his proof.

43. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 43, and therefore leaves Plaintiff to his proof.

## COUNT 1
### (Intentional Interference with Contractual/Advantageous Relations)

44. ASI hereby incorporates its responses to Paragraphs 1 – 43 of Plaintiff's Complaint as its response to Paragraphs 1 – 43 of this First Count, as if fully restated herein.

45. Admitted.

46. ASI admits so much of Paragraph 46 as alleges that ASI indicated to Manulife that the covenant not to compete entered into by Plaintiff and ASI precluded Plaintiff from performing the short-term project for Manulife. Except as expressly so admitted, the allegations of Paragraph 46 are denied.

47. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 47, and therefore leaves Plaintiff to his proof.

48. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 48, and therefore leaves Plaintiff to his proof.

49. Denied.

## COUNT II
### (M.G.L. c 93A)

50. ASI hereby incorporates its responses to Paragraphs 1 – 49 of Plaintiff's Complaint as its response to Paragraphs 1 – 49 of this Second Count, as if fully restated herein.

51. Denied.

52. ASI avers that ASI and Plaintiff are engaged in "commerce" as defined by Mass. Gen. L. c. 93A § 1(b). Except as expressly so averred, the allegations of Paragraph 52 are denied.

53. Denied.

54. Denied.

55. Denied.

## COUNT III
### (Declaratory Judgment)

56. ASI hereby incorporates its responses to Paragraphs 1 – 55 of Plaintiff's Complaint as its response to Paragraphs 1 – 55 of this Third Count, as if fully restated herein.

57. ASI lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 57, and therefore leaves Plaintiff to his proof.

58. Denied.

## COUNT IV
### (Injunctive Relief)

59. ASI hereby incorporates its responses to Paragraphs 1 – 58 of Plaintiff's Complaint as its response to Paragraphs 1 – 58 of this Fourth Count, as if fully restated herein.

60. Denied.

61. Denied.

62. Denied.

## AFFIRMATIVE DEFENSES

FIRST AFFIRMATIVE DEFENSE

The Plaintiff fails to state a claim upon which relief may be granted.

SECOND AFFIRMATIVE DEFENSE

ASI did not act in bad faith and therefore the imposition of a statutory penalty is not warranted.

THIRD AFFIRMATIVE DEFENSE

The Plaintiff has not been prejudiced as a result of ASI's actions such that a statutory penalty is warranted.

FOURTH AFFIRMATIVE DEFENSE

The Plaintiffs claims for damages are duplicative and cumulative.

ASI intends to rely upon such other and further defenses as may become available or apparent during pretrial proceedings in this action and hereby reserves the right to amend its Answer and to reserve all such defenses.

## COUNTERCLAIMS

## COUNT ONE: BREACH OF CONTRACT

1. ASI and Counterclaim Plaintiff, Actuarial Strategies, Inc. ("ASI"), is a Connecticut corporation with its principal place of business in Bloomfield, Connecticut.

2. Upon information and belief, Plaintiff and Counterclaim Defendant Charles Dana Tatro ("Plaintiff") is a resident of Mendon, Massachusetts.

3. On or about December 20, 2002, ASI and Plaintiff entered into an employment contract (the "Contract") which set forth the terms of Plaintiff's employment at ASI.

4.   Plaintiff's employment at ASI was conditional upon Plaintiff and ASI entering into an Intellectual Property Agreement Covenant Not to Compete (the "Covenant"). A true and accurate copy of that Covenant is attached hereto as Exhibit 1.

5.   As consideration for entering into the Covenant, Plaintiff was to be employed by ASI at a starting salary of $170,000, with eligibility for substantial bonuses.

6.   On or about December 20, 2002, Plaintiff and ASI entered into the Covenant.

7.   On or about December 20, 2002, Plaintiff also signed a copy of the ASI Employee Handbook.

8.   The Covenant provides, in a pertinent part, that with respect to those services Plaintiff provided for ASI, Plaintiff may not solicit any actual or active prospective customer of ASI for whom he performed services during the last 12 months of his employment at ASI.

9.   The Covenant also provides that, for a period of 18 months after the termination of his employment at ASI, Plaintiff cannot perform services similar to those he performed at ASI for any competitor of ASI.

10.  The Covenant further provides that Plaintiff cannot "call upon, divert or solicit any person, persons, company, partnership or corporation for the purpose of selling or marketing services or products competitive with the business being carried on by [ASI]."

11.  In November 2004, ASI offered Plaintiff the choice to resign or be terminated for viewing and downloading pornographic materials on a laptop that ASI had provided to him for work purposes. Plaintiff chose to resign.

12.  Viewing and downloading pornographic materials violates the policies set forth in the ASI Employee Handbook.

13. During the final 12 months of his employment, Plaintiff performed work for Manulife Financial ("Manulife"), an ASI client.

14. In late 2004, Manulife and ASI reach a tentative agreement that ASI, through ASI employee Jonathan Clymer, would perform a short-term project for Manulife in exchange for approximately $64,000.

15. In November 2004, Manulife informed ASI that it was not going to give this short-term project to ASI.

16. Manulife representative Robert Leach informed ASI that instead of working with ASI, Manulife was going to work directly with Plaintiff.

17. Plaintiff breached the Covenant by pursuing employment at Manulife, an ASI customer for which Plaintiff had worked for during the last 12 months of his employment at ASI.

18. In November 2004, ASI was also scheduled to begin a substantial project for Merrill Lynch, an ASI customer for which Plaintiff had done work during the 12 months preceding his resignation.

19. After Plaintiff resigned, the Merrill Lynch project ceased suddenly and without meaningful explanation.

20. Upon information and belief, Plaintiff completed the project directly for Merrill Lynch.

21. Upon information and belief, Plaintiff breached the Covenant by working directly for Merrill Lynch, an ASI customer for which Plaintiff had done work during the last 12 months of his employment at ASI.

22. ASI fulfilled all of its obligations under both the Contract and the Covenant.

23. As a result of Plaintiff's actions, ASI has suffered damages.

## COUNT TWO: VIOLATION OF MASS. GEN. L. c. 93A, § 11

24. ASI hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 – 23 of ASI's Counterclaims as if fully restated herein.

25. ASI and Plaintiff are engaged in "trade" or "commerce" in the Commonwealth of Massachusetts, as defined by Mass. Gen. L c. 93a, §1(b).

26. ASI and Plaintiff are "persons" as defined by Mass. Gen. L. c. 93a, §1(a).

27. Plaintiff unfairly and deceptively pursued employment at Manulife and Merrill Lynch in express breach of the terms of the Covenant.

28. Plaintiff's actions were willful and malicious, in that he knew he could not gain employment from an ASI customer but nevertheless pursued such employment.

29. As a direct and proximate result of these unfair and deceptive practices, ASI has been damaged by an amount to be determined at trial, but in any event not less than $64,000 plus treble damages, interest, costs and attorneys' fees.

## COUNT THREE: INJUNCTIVE RELIEF

30. ASI hereby re-alleges and incorporates by reference the allegations contained in Paragraphs 1 – 29 of ASI's Counterclaims as if fully restated herein.

31. Upon information and belief, Plaintiff has and will continue to pursue employment with customers and competitors of ASI in violation of the Covenant.

32. If Plaintiff is not enjoined from violating the Covenant, he will be able to use ASI's proprietary products and information to unfairly compete against ASI.

33. ASI is likely to succeed on the merits of its claim.

34. ASI will suffer irreparable harm if Plaintiff is not enjoined from violating the Covenant.

35. The irreparable harm Plaintiff will suffer far exceeds any minimal harm that an injunction may or may not cause Plaintiff.

36. No public interest will be adversely affected if the injunction is granted.

**WHEREFORE**, ASI respectfully prays for the following relief:

1. Money damages;

2. Double or treble damages;

3. Attorneys' fees, interest and costs;

4. An injunction against Plaintiff, including an order that Plaintiff refrain from violating the Covenant; and

5. Such further relief as is just and equitable.

Dated: February 28, 2005

DEFENDANT,
ACTUARIAL STRATEGIES, INC.

By /s/ John P. McLafferty
John P. McLafferty (BBO# 639179)
Glenn W. Dowd, *pro hac vice*
Day, Berry & Howard LLP
260 Franklin Street
Boston, Massachusetts 02110
(617) 345-4600
Its Attorneys

## CERTIFICATE OF SERVICE

    I, John P. McLafferty, hereby certify that on the 28th day of February, 2005, I served a true and correct copy of the foregoing via overnight mail upon Plaintiff's counsel, John M. Wozniak, Esq., Wozniak & Padula, P.C., 82 Cape Road, Route 140, Mendon, MA 01756.

                                                          /s/ John P. McLafferty
                                                          John P. McLafferty



### Intellectual Property Agreement Covenant Not to Compete

As a condition and in consideration of my continued employment by Actuarial Strategies, Inc., or any of its successors or assigns (hereinafter referred to as the EMPLOYER), I, the EMPLOYEE named below, agree as follows:

1. Unless the EMPLOYER has acquired specific authorization, I will not disclose to or use in my work with the EMPLOYER any proprietary information of others, including any of my prior employers.

2. During the term of this Agreement and at all times thereafter, I will keep in confidence and will not publish, use or disclose to others, without the prior written consent of the EMPLOYER, any Trade Secrets or other confidential information related to the EMPLOYER or the EMPLOYER's business. As used herein, the phrase "Trade Secret"" is to be considered as used in accordance with the definition of Trade Secret found under Connecticut law in effect at the time of the execution of this Agreement. Without limiting this definition, and for information purposes only, a Trade Secret is the whole or any portion of any technical or non-technical information, including a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, financial plan, product plan or customer or supplier information that is actually or potentially valuable because it is not generally known to others and that is subject to reasonable efforts by the EMPLOYER to maintain its secrecy.

3. Upon leaving the employ of the EMPLOYER, I will not take with me any written, printed or electronically stored Trade Secret or other confidential information or any other property of the EMPLOYER obtained by me as the result of my employment, or any reproductions thereof. All such property and all copies thereof shall be surrendered by me to the EMPLOYER on termination of employment or at any time on request by the EMPLOYER.

4. I agree that all trade secrets, inventions, works of authorship (including illustrations, writings, software and computer programs), improvements, devices, designs, discoveries, practices, processes, methods, formulae, products and the like (hereinafter collectively called "INVENTIONS") and all other business or technical information created or conceived by me, either alone or with others, while employed by the EMPLOYER and related to the existing or contemplated business or research of the EMPLOYER or resulting from my work with the EMPLOYER, belong to the

EMPLOYER. Until proven otherwise, any INVENTION shall be presumed to have been conceived during such employment if within one (1) year after termination of such employment it is disclosed to others, or it is completed, or it has a patent application filed thereon.

5.    I will promptly disclose to the EMPLOYER all INVENTIONS, and any other information which belong to the EMPLOYER under paragraph 4 above; and I will assign to the EMPLOYER, or to others as directed by the EMPLOYER, all of my interest in such INVENTIONS, without charge, and I will execute any papers and do any acts which the EMPLOYER may consider necessary to secure to it any and all rights relating to such INVENTIONS, including all patents and copyrights (and renewals thereof) in any country.

6.    I recognize, further, that all records, reports, notes, compilations, or other recorded matter, and copies or reproductions thereof, relating to the EMPLOYER's operations, activities or business, made or received by me during any period of my employment with the EMPLOYER are and shall be the property of the EMPLOYER exclusively, and I will keep the same at all times subject to the EMPLOYER's control and will surrender the same at the termination of my employment, if not before.

7.    I attach hereto a complete list of all INVENTIONS that I have made or conceived prior to my employment by the EMPLOYER and I desire that the INVENTIONS shall be excluded from this Agreement.

8.    I shall not, for a period of eighteen (18) months following the termination of my employment with the EMPLOYER, directly or indirectly:

(a)    perform services, similar to those I have performed for the EMPLOYER for any person, persons, company, partnership or corporation whose business is competitive with the business being carried on by the EMPLOYER or with respect to such services, solicit any actual or active prospective customer of the EMPLOYER for whom I performed services while employed by the EMPLOYER during the twelve months preceding my termination of employment;

(b)    nor call upon, divert or solicit any person, persons, company, partnership or corporation for the purpose of selling or marketing services or products competitive with the business being carried on by the EMPLOYER;

(c)    nor employ or attempt to employ or assist anyone else to employ any person who is at such time, or at any time during the preceding year, was an employee of or consultant to the EMPLOYER, provided that this clause shall not restrict employment of a third party vendor who supplies generic services to the industry. As used in this section, the verb "employ" shall include its variations, for example, retain, engage or conduct business with.

9. This Agreement shall be construed in accordance with and governed for all purposes by the laws of the State of Connecticut. The parties have entered into this Agreement in the belief that its provisions are valid, reasonable and enforceable. However, if any one or more of the provisions contained in this Agreement shall, under existing or hereafter enunciated law, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Agreement, but this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein. If, moreover, any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to time, duration, geographical scope, activity or subject, it shall be construed, by limited and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

This Agreement supersedes all prior oral or written agreements and is effective with respect to the subject matter hereof subsequent to the date executed.

I acknowledge receipt of an executed copy of this Agreement.

This Agreement is executed this 20TH day of December, 2002 at Mendon, MA.

city, state

Actuarial Strategies, Inc.

BY _____

Print Name CARY LAKENBACH

Title President

EMPLOYEE

Signature _____

Print Name Dana Tatro

Residence 49 George St

City Mendon

State MA

Page 3 of 3